UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
************************************
                                   *
Laura M. Bonk,                     *
                                   *
          Plaintiff                *          COMPLAINT
                                   *          Jury Trial Requested
                                   *
v.                                 *
                                   *
Axiom Partners, Inc,               *
                                   *
          Defendant                *
************************************
```

NOW COMES the plaintiff Laura M. Bonk, by and through her attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

## I.    **Parties**

1.    The plaintiff Laura M. Bonk resides at 250 Deerfield Road in Allenstown, New Hampshire.  Ms. Bonk is a former employee of the defendant.

2.    Axiom Partners, Inc. is a Massachusetts corporation with a principal place of business at 50 Salem Street, Suite 103B, Lynnfield, Massachusetts.

## II.    **Jurisdiction and Venue**

3.    The Court has diversity jurisdiction pursuant to 28 U.S.C. §1332.  Ms. Bonk is a citizen of New Hampshire, while the defendant is a citizen of Massachusetts.  The amount in controversy exceeds $75,000.00.

4.    Venue is proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Ms. Bonk's claim occurred in New Hampshire.

1

### III.    Facts

5.      The defendant employed Ms. Bonk as a Project Manager and Certified Safety Professional beginning on or around May 1, 2024.  Ms. Bonk primarily worked from her home in Allenstown, New Hampshire.

6.      The defendant had a contract with GE Aerospace under which the defendant provided services at Ge Aerospace's facility in Lynn, Massachusetts, developing and executing management plans relating to chemical and noise exposure, personal protective equipment and other required OSHA programs at the facility.

7.      The defendant's contract with GE Aerospace required the defendant to prepare reports describing chemical and noise exposure at the Lynn facility.

8.      In or around the summer of 2025, GE Aerospace requested that the defendant provide it copies of such reports describing chemical and noise exposure at the Lynn, MA, facility for the preceding twenty-five (25) years.

9.      Ms. Bonk subsequently discussed with the defendant's President, Christopher LaPorte, her discovery that the defendant did not possess the reports that GE Aerospace sought. Ms. Bonk discovered, and reported to Mr. LaPorte, that the defendant had collected data pertaining to chemical and noise exposure at the Lynn, MA, facility, but the defendant had failed to prepare reports describing the data.  The defendant's Senior Industrial Hygienist, Evan MacArthur, had been responsible for writing the reports, at least in recent years, but had failed to do so.

10.     In or around December of 2025, Mr. LaPorte instructed Ms. Bonk to prepare the requested reports.

11.     Ms. Bonk proceeded to write 73 reports summarizing data collected from 2014 through 2023.

12.    Ms. Bonk asked a Certified Industrial Hygienist with the defendant, Ed Kearney, to proofread approximately 15 of the 73 reports that Ms. Bonk prepared.  Mr. Kearney agreed to proofread the reports, and he did so, but Mr. Kearney emphasized that he did not want his signature on the reports because he had not been involved with the associated projects when the data was collected.

13.    Ms. Bonk saved her draft reports in the defendant's software system with neither her signature nor Mr. Kearney's signature affixed to the reports, given that neither she nor Mr. Kearney had collected the data that the reports concerned.

14.    Mr. LaPorte advised Ms. Bonk that he had performed the "final assembly" of the reports she drafted for delivery to GE Aerospace.

15.    On or about February 9, 2026, Ms. Bonk began to review the assembled reports that were to be delivered to GE Aerospace and discovered that Certified Industrial Hygienist Kearney's signature had been fraudulently affixed to the first seven (7) reports that she reviewed. Ms. Bonk was not able to review further reports.

16.    Mr. Kearney wrote a February 10, 2026, e-mail to Mr. LaPorte emphasizing that he did not want his signature on any reports to GE Aerospace relating to data collected between 2014 and 2023 because he had no involvement in the projects that the reports concerned.  Exhibit A.

17.    Ms. Bonk supported Mr. Kearney in a February 10, 2026, e-mail, writing in part that Mr. Kearney's "signature and license carry a legal obligation" given his status as a Certified Industrial Hygienist, and emphasizing that Mr. Kearney had "explicitly asked that his signature not be on the reports" and that she "had complied with that request." Id.

18.    Mr. LaPorte responded to concerns about Mr. Kearney's signature being fraudulently affixed to the GE Aerospace reports only by sending a February 10, 2026, e-mail

3

stating in pertinent part, "I am not sure where the problem lies here with these reports." Id. Mr. LaPorte noted that the signature of another Axiom employee (Evan MacArthur) was also being affixed to the reports, though Mr. MacArthur had not authored them. Id.

19.     The forgery of Mr. Kearney's signature troubled Ms. Bonk, and she also fretted that the defendant may have fraudulently affixed her signature to reports, given that she was the defendant's sole Certified Safety Professional.

20.     At 8:31 a.m. on February 17, 2026, Mr. Bonk e-mailed Matthew Buccella (the defendant's Secretary) and Janlyn Driscoll (the defendant's Treasurer and Director) to express her concerns about the forgery and to request that the defendant take corrective action. Exhibit B.

21.     The defendant fired Ms. Bonk later that day, claiming a "lack of applicable work." Exhibit C. The defendant's stated reason for the termination amounted to pretext, given that the GE Aerospace contract on which Ms. Bonk worked was ongoing, and given the demand that arises for Certified Safety Professionals such as Ms. Bonk in the spring as new construction projects begin.

## COUNT I

### (Violation of RSA 275-E:2)

22.     The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

23.     Ms. Bonk reported to the defendant what she reasonably believed to constitute conduct violating laws or rules adopted under the laws of New Hampshire and/or of the United States, specifically laws and/or rules prohibiting forgery.

4

24. The defendant fired Ms. Bonk because she reported conduct that she reasonably believed violated laws or rules adopted under the laws of New Hampshire and/or of the United States.

25. The defendant's violations of RSA 275-E:2 entitle Ms. Bonk to reinstatement, back pay and reasonable attorney's fees.

## COUNT II

### (Wrongful Discharge)

26. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

27. The defendant fired Ms. Bonk out of bad faith and/or malice.

28. "An employer's bad faith or malice may be established where…the record does not support the stated reason for the discharge…." Hidalgo-Semlek v. Hansa Medical, Inc., 498 F.Supp.3d 236, 268 (D.N.H. 2020). The availability of adequate work for Ms. Bonk reveals the defendant's bad faith and malice in firing Ms. Bonk for a supposed "lack of applicable work."

29. "Bad faith can also be discerned from…the manner in which the plaintiff was discharged…." Id. The defendant terminated Ms. Bonk via e-mail without giving her any prior notice that her employment was in any jeopardy.

30. The defendant fired Ms. Bonk in retaliation against her for performing acts encouraged by public policy. Public policy encouraged Ms. Bonk to report her reasonable belief that the defendant had committed forgery and to advocate for corrective action to ensure that further instances of forgery did not occur.

31. As a direct and proximate result of the defendant's wrongful discharge of Ms. Bonk, Ms. Bonk has suffered and continues to suffer damages, including without limitation lost wages,

lost employment benefits, lost earning capacity, and emotional distress.  Ms. Bonk is further entitled to enhanced compensatory damages due to the wanton, malicious and oppressive conduct of the defendant in firing her.

WHEREFORE, the plaintiff Laura M. Bonk respectfully prays this Honorable Court:

A.      Schedule this matter for trial by jury, and after trial;

B.      Find the defendant liable for violation of RSA 275-E:2;

C.      Find the defendant liable for wrongful discharge;

D.      Award the plaintiff damages for lost wages including but not limited to back pay, lost employment benefits and lost earning capacity;

E.      Award the plaintiff damages for emotional distress;

F.      Award the plaintiff enhanced compensatory damages;

G.      Award the plaintiff reasonable attorney's fees;

H.      Award the plaintiff interest and costs; and

I.      Grant such other and further relief as is just and equitable.

Respectfully submitted,
LAURA M. BONK
By her attorneys,
DOUGLAS, LEONARD & GARVEY, P.C.

Date:  July 6, 2026          By:    /s/Benjamin T. King
                                    Benjamin T. King, NH Bar #12888
                                    14 South Street, Suite 5
                                    Concord, NH 03301
                                    (603) 224-1988
                                    benjamin@nhlawoffice.com

6